```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

BICC CABLES CORP. and             :
BALFOUR BEATTY, INC.,             :
                                  :
     Plaintiffs,                  :
                                  :
V.                                :   CASE NO. 3:04-CV-1545(RNC)
                                  :
SCOTT & SCOTT, LLC, ET AL.,       :
                                  :
     Defendants.                  :
```

RULING AND ORDER

BICC Cables Corporation (a Delaware corporation based in New York) and its parent, Balfour Beatty, Inc. (a Delaware Company based in Delaware), bring this diversity case against Scott and Scott, LLC (a Connecticut entity) and Attorney David R. Scott (a Connecticut resident), as well as Attorney C. Thomas Ross (a North Carolina resident) and his law firm (a North Carolina sole proprietorship), seeking damages for legal malpractice in connection with the defendants' representation of Brand Rex Company, a BICC division that was located in Connecticut at the time of the underlying events. The Ross defendants have moved to be dismissed from the suit due to lack of personal jurisdiction. (Doc. # 18) The Scott defendants have moved to amend their answer to add a cross-claim against the Ross defendants. (Doc. # 59) For the reasons summarized below, the motion to dismiss is denied and the motion to amend is granted.

I.   Background

The following chronology is drawn from the record presently

before the court, viewed most favorably to the plaintiffs.  In 1996, Arthur, Harris & Associates ("Arthur, Harris") sued Brand Rex in North Carolina.  At approximately the same time, Brand Rex sued Arthur, Harris in Connecticut.  Brand Rex retained the defendants to assist in the resolution of both actions.

Beginning in 1997, Arthur, Harris served discovery requests on Brand Rex in the action in North Carolina seeking, among other things, production of documents in the possession of Brand Rex in Connecticut.  Attorney Ross transmitted the requests to Attorney Scott and communicated with him regarding how the requests should be handled.  Brand Rex eventually produced a vast number of documents for inspection by counsel for Arthur, Harris at Brand Rex's location in Connecticut.  The production took the form of 94 bankers boxes of undifferentiated documents, which did not include several requested documents.  Compl. ¶¶ 31, 32.

Arthur, Harris subsequently sought and obtained an order from the North Carolina court directing Brand Rex to fully comply with its discovery obligations by October 15, 1998.  Such an interlocutory order is not appealable under North Carolina law, but an appeal was filed; and although the order was not stayed pending the outcome of the appeal, no attempt was made to comply with it.  In February 1999, the appeal was dismissed and Brand Rex was ordered to pay Arthur, Harris's appellate costs.

In April 1999, the North Carolina trial court held a hearing on a motion for sanctions against Brand Rex, which Arthur, Harris had filed because of defendants' repeated failure to comply with discovery deadlines.  In July 1999, Attorney Ross traveled to Connecticut to meet with his co-counsel and review the history of document production in the litigation.  His visit wound up lasting several days.

The North Carolina court subsequently granted Arthur, Harris's motion for sanctions and entered a default judgment against Brand Rex.  After a damages hearing, the court determined that Arthur, Harris was entitled to $1.2 million in damages, plus exemplary damages, and attorneys' fees.  Brand Rex settled the litigation for "a substantial sum."  Compl. ¶ 64.  This suit followed.

II.  Discussion

    A.  Motion To Dismiss

The motion to dismiss for lack of personal jurisdiction is denied because the plaintiffs have sustained their burden of showing that the action arises from the Ross defendants' transaction of business in Connecticut within the meaning of the long-arm statute, Conn. Gen. Stat. § 52-59b(a)(1).[1]  This prong

---

[1] The question has been raised whether the plaintiffs are entitled to avail themselves of the benefits of the long-arm statute in light of the rulings in Pomazi v. Health Indus. of Am., Inc., 869 F. Supp. 102, 104 (D. Conn. 1994) and Estate of Nunez-Polanco v. Boch Toyota, Inc., 339 F. Supp. 2d 381, 383 (D.

3

of the statute has been construed to "embrace a single purposeful business transaction." Zartolas v. Nisenfeld, 184 Conn. 471, 474 (1981).  Defendants' contacts with Connecticut pursuant to their retainer agreement with Brand Rex, considered in the aggregate, satisfy this test.  See Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 60 (2d Cir. 1985) (court should view the totality of the circumstances surrounding the defendant's in-state activities in connection with the matter giving rise to the lawsuit to see if there is a substantial nexus between the two.)[2]

The following facts and circumstances are particularly relevant: Attorney Ross marketed his legal services to Brand Rex by transmitting his resume to Connecticut;[3] the resume made it clear that Attorney Ross's practice extended beyond the boundaries of North Carolina; Attorney Ross later sent a retainer

---

Conn. 2004).  The plaintiffs in Pomazi and Estate of Nunez-Polanco were residents of New York.  See Pomazi, 869 F. Supp. at 104; Estate of Nunez-Polanco, 339 F. Supp. 2d at 383.  Here, in contrast, the plaintiffs act on behalf of a division of their enterprise, which was located in Connecticut when the cause of action arose.  In light of this, I conclude that the plaintiffs are entitled to invoke the long-arm statute to seek redress in this forum.

[2]  Because jurisdiction exists under this prong of the long-arm statute, it is unnecessary to consider whether jurisdiction is available under any other prong.

[3]  The Ross defendants contend that they were solicited to perform legal services in North Carolina and did not reach out to Connecticut for work.  On the record before the court at this stage of the case, however, the plaintiffs' version of the disputed events must be credited.

agreement to Connecticut, which Brand Rex signed here, thus forming a contract here; Brand Rex reasonably expected Attorney Ross to provide assistance in connection with the case in Connecticut, as well as the case in North Carolina, and he proceeded to do so; in the course of his extensive work on behalf of Brand Rex, Attorney Ross initiated no fewer than 200 written and oral contacts with Connecticut (Pls.' Mem. Opp'n Defs.' Mot. To Dismiss at 2); a number of these contacts show that Attorney Ross was involved in the handling of the requests for production of documents that led to the court orders at issue here; the requests covered documents maintained by Brand Rex at its location in Connecticut; Attorney Ross ultimately spent several days in Connecticut performing services in connection with the production of documents by Brand Rex; and he did so before the sanctions were imposed by the court in North Carolina.  That these factors add up to transacting business in Connecticut within the meaning of the long-arm statute is consistent with "considerations of public policy, common sense, and the chronology and geography of relevant factors." Zartolas, 184 Conn. at 477.

The Ross defendants contend that requiring them to litigate in this forum would be inconsistent with their right to due process of law because they did not purposefully avail themselves of the privilege of doing business in Connecticut and did not

5

anticipate that representing Brand Rex in the North Carolina case could result in their being haled into court in Connecticut.  But the contacts listed above are "not the kind of 'random, fortuitous, or attenuated contacts' or 'unilateral activity of another party or a third person' that the purposeful availment requirement is designed to eliminate as a basis for jurisdiction."  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 128 (2d Cir. 2002) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

The Ross defendants also contend that "requiring [Attorney] Ross to defend this claim in Connecticut will place special and unusual burdens upon him unlike attorneys whose practice often takes them out of their home jurisdiction."  Defs.' Mem. Supp. Mot. To Dismiss at 18.  However, the "widespread use of facsimile equipment and overnight mail and the courts' increasing use of telephone conferences in lieu of live conferences reduces the burden on nonresidents of litigating in a distant state."  Cody v. Ward, 954 F. Supp. 43, 47 n.9 (D. Conn. 1997).  All things considered, it is not unreasonable to require Attorney Ross to respond in this forum to the plaintiffs' malpractice claim arising from his handling of the requests for production of documents.  See Bank Brussels Lambert, 305 F.3d at 129; see also Burger King Corp., 471 U.S. at 472.

6

B.  Motion to Amend

The motion to amend filed by the Scott defendants is granted, for good cause,[4] to enable the parties to fully resolve their dispute in one forum.  There has been no undue delay in seeking leave to amend, and permitting the amendment will cause no undue prejudice.

III. Conclusion

Accordingly, the motion to dismiss (Doc. # 18) is hereby denied, and the motion to amend (Doc. # 59) is hereby granted.

So ordered.

Dated at Hartford, Connecticut this 31st day of March 2006.

```
              _____\s_____
                       Robert N. Chatigny
                  United States District Judge
```

---

[4] Because a tailored scheduling order has been entered, "the lenient standard under Rule 15(a), which provides leave to amend [a pleading] 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause'."  Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003).

7